IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 13 2014

ARTHUR JOHNSTON
BY_____DEPUTY

| | | |
|---|---|---|
| VAUGHN PERRET | ) | |
| CHARLES LEARY | ) | PLAINTIFFS |
| TROUT POINT LODGE, LTD, A Nova | ) | |
| Limited Company | ) | |
| | ) | |
| v. | ) | Civil Action No.1:14cv241 LG-JMR |
| | ) | |
| DOUGLAS HANDSHOE | ) | DEFENDANT |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SECURITY FOR COSTS

**MAY IT PLEASE THE COURT:**

This Memorandum in Support of Motion for Security for Costs is respectfully submitted by Defendant, Douglas Handshoe seeking that Plaintiffs be ordered to post Security for Costs in the amount of Three Thousand Five-Hundred Dollars ($3,500) or this case be dismissed without prejudice with defendant awarded for all costs and associated fees.

### HISTORY

The Canadian defamation judgment at the heart of this instant action is the sixth defamation suit against Defendant to which Vaughn Perret, Charles Leary, their partner Louisiana Attorney Daniel Abel and/or their shell company Trout Point Lodge Ltd. of Nova Scotia have filed against Defendant, Defendant's lawyers, Defendant's webhosts and other third parties in connection with a campaign of litigation terrorism via meritless defamation suits designed to harass and punish Handshoe for exposing Leary's, Perret's, Abel's roles in a bribery and money laundering scheme perpetrated by former Jefferson Parish President Aaron Broussard.  The numerous SLAPP suits in Nova Scotia and Louisiana have also included as a Defendant Jefferson Parish corruption whistleblower Anne Marie Vandenweghe, joined in the

1

Louisiana litigation instituted by Mr. Abel via the false claim that Ms. Vandenweghe is a "co-publisher" of the Slabbed New Media website.[1]

In this instant civil action Plaintiffs seek to recycle their first attempt to enroll a Canadian defamation judgment that was rejected by this very court in the case *Trout Point et al v Handshoe 729 F. 3d 481*.  Defendant was awarded $48,000 in Attorney Fees under the SPEECH Act of 2010 in that action, a judgment of this Honorable Court that Plaintiffs have actively sought to negate by several judicial and extra judicial means, including by filing a lawsuit in Nova Scotia against Defendant's Counsel, Jack "Bobby" Truitt.

Finally the legal carnage related to their first attempt to enroll a Canadian defamation award also includes Plaintiffs' former attorney Henry Laird, whom Plaintiffs sued on March 14, 2014 alleging Legal Malpractice and Fraud against Laird and his law firm[2].

## LAW AND ARGUMENT

"Security for costs is not covered by Fed. R. Civ. P. Rule 54(d) and there is no general jurisprudential rule governing the subject. As a procedural matter, security for costs is a proper subject for regulation by local rules promulgated under Fed. R. Civ. P. 83. Even in the absence of a local rule, however, a district court has inherent power to require security for costs when warranted by the circumstances of the case", wrote the Fifth Circuit Court of Appeals in *Ehm v. Amtrack, 780 F.2d 516*.  In that case, a nonresident Plaintiff was a made to post a security bond for anticipated litigation costs.

---

[1] Ms. Vandenweghe was also evidently sued in Nova Scotia in the case which would eventually become Trout Point et al v Handshoe 729 F. 3d 481, first by naming her email address and later by adding her name to the court record post judgment, without Ms. Vandenweghe ever being served with any process in that Nova Scotia SLAPP suit, the enforcement of which lay at the heart of that first SPEECH Act legal action.

[2] Plaintiffs in this case are using the services of Daniel Abel as their attorney of record in that lawsuit.  Abel participation in this campaign of litigation terrorism wearing a variety of hats from attorney to Plaintiff cannot be gainsaid.

The legal history leading to *Ehm* has its roots in the United States Court of Appeals for the First Circuit case *Hawes v. Club Ecuestre el Comandante, 535 F.2d 140, 144* (1st Cir. 1976) wherein the court developed a set of overarching relevant factors to be considered in determining whether security for costs should be imposed.  The First Circuit enumerated the following factors: "ownership by a non-domiciliary plaintiff of attachable property in the district, the likelihood of success on the merits, the presence of a co-plaintiff who is domiciled in the district, the probable length and complexity of the litigation, the conduct of the litigants, and the purposes of the litigation.

Later, the First Circuit would fine tune the guidance provided in *Hawes* in the action styled *Aggarwal v. Ponce School of Medicine, 745 F. 2d 723*.  The court in *Aggarwal* adopted a fact based test, the factors of which include (1) The probability of plaintiff's success on the merits, (2) The background and purpose of the suit, and (3) the reasonableness of amount of the posted security viewed from the perspective of both plaintiff and defendant. The Fifth Circuit in *Ehm* adopted the factors in *Aggarwal* in their ruling affirming the District Court's order which required the non-resident Plaintiff to post a $500 cost bond or face dismissal of his lawsuit.

## I.   HOW THE *HAWES* AND *AGGARWAL / EHM* FACTORS APPLY TO THIS INSTANT CASE.

It is undisputed that Plaintiffs in this instant civil action are non-residents of the United States that, by their own admission have no economic contacts with this district to enable recovery of justly awarded costs and attorney fees.[3] It is also undisputed that Plaintiffs remain judgment debtors to Defendant in the amount of $48,000 in the case *Trout Point et al v Handshoe* 729 F. 3d 481.

---

[3] Plaintiffs stated such in their affidavit at ECF #21-1 in the case Handshoe v Broussard, Civil Action number 1:13CV251-LG-JMR, (remanded) "Neither Leary, Perret nor Trout Point has ever had business or economic contacts with Mississippi" and "Trout Point and we do not own real property in the United States".

## II.   PLAINTIFFS, BY THEIR OWN ADMISSION, HAVE NO PROBABILITY OF SUCCESS ON THE MERITS IN THIS CASE.

The multitude of lawsuits against Defendant Handshoe, several of his attorneys and others that are the aftermath of Plaintiffs first attempt to enroll their Canadian defamation award in Mississippi cannot be gainsaid.  A plain read of the Fifth Circuit's Opinion in *Trout Point et al v Handshoe 729 F. 3d 481* indicates, as a matter of law that virtually no defamation judgment rendered pursuant to Canadian law and procedure would be enforceable in the United States due to the SPEECH Act of 2010. This observation was made by several legal observers including Defendant Handshoe's lawyer in that case, Jack E. Truitt, after the Fifth Circuit Court's opinion in *Trout Point et al v Handshoe* was rendered[4].

Plaintiffs appear to agree with that observation as stated in their legal malpractice suit against their former attorney Henry Laird, filed in the Civil District Court of Orleans Parish Louisiana were they conclude in paragraph 103 of their complaint that Mr. Laird's handling of their first attempt to enforce a Nova Scotia Defamation award against Instant Defendant, "has permanently prejudiced the Trout Point Plaintiffs in any future attempt to enforce their *valid 2012 Nova Scotia judgment and / or any other future money judgment* they may obtain against slabbed.org and / or Mr. Handshoe." (*Emphasis* added).

Further, a plain read of the Nova Scotia Supreme Court's Opinion rendered in this instant case in Nova Scotia indicates the litigation at the heart of the Plaintiffs' judgment is nothing more than a derivative and extension of the first of three Canadian based SLAPP defamation

---

[4] See Big Victory In Effort To Curb Libel Tourism –Trout Point Lodge v. Handshoe by law professor Eric Goldman originally published by Forbes Magazine. http://blog.ericgoldman.org/archives/2013/09/big_victory_in.htm

suits against Defendant, which has previously been denied comity in the United States via *Trout Point et al v Handshoe 729 F. 3d 481.*[5]

### III. THE BACKGROUND AND PURPOSE OF THIS INSTANT ACTION IS CLEARLY IN FURTHERANCE OF A REPITITIOUS PATTERN OF ABUSE OF PROCESS AND MALICIOUS PROSECUTION DESIGNED TO SILENCE PUBLIC INQUIRY INTO BROUSSARD ERA CRIMINAL ACTIVITY AND TO HARASS AND PUNISH THOSE THAT SPOKE OUT ALONG WITH THE LAWYERS THAT HAVE DEFENDED THEM IN THE US COURT SYSTEM

The fact that Plaintiffs in this instant action are "Frequent Flyers" in both the U.S. and Canadian judicial systems is self-evident given the multitude of lawsuits they have filed seeking to harass and punish Defendant Handshoe along with the attorneys that endeavored to defend Handshoe against Plaintiffs' meritless allegations of defamation. For instance, in the suit styled *Daniel G. Abel, Individually and as Representative Petitioner v. Douglas K. Handshoe, Anne Marie Vandenweghe, Jack "Bobby" Truitt, Paul Vance, Scott Sternberg, Brodie Glenn, Baldwin Haspel Burke & Mayer, LLC,* Mr. Abel recycled many of the allegations contained in both the first and third Canadian defamation suits filed against Defendant by Perret, Leary and Trout Point Lodge.[6]  There are no coherent allegations of Defamtion against Bobby Truitt, Paul Vance, Scott Sternberg, Brodie Glenn and Baldwin Haspel Burke & Mayer, LLC contained in the 47 page lawsuit which Mr. Abel filed on behalf of himself and unnamed others, however, the

---

[5] Examples include paragraph 7 in the opinion rendered in the case styled *Trout Point Lodge Ltd. v. Handshoe*, 2014 NSSC 62, which lies at the heart of this action when Justice Kevin Coady wrote of Justice Suzanne Hood, whom presided over the first Nova Scotia defamation suit, "Justice Hood also reviewed the some of Mr. Leary's evidence that addressed the impact of Mr. Handshoe's actions. I will repeat that evidence here as it arose in this application as well." Paragraph 10 states "The evidence presented establishes that Mr. Handshoe's defamatory actions have continued unabated since Justice Hood's order. This is supported by the statement of claim which I must accept as proven." and "The evidence on this application satisfies me that Mr. Handshoe was not deterred by Justice Hood's decision. There is little difference between his actions pre and post January 31, 2012 when the first assessment of damages was initiated." This opinion is attached as Exhibit 1.

[6] The allegations of defamation related to the Concrete Busters Racketeering suit, for example, are almost identical in Abel's New Orleans Civil District Court defamation lawsuit that Abel filed on behalf of himself and unspecified unnamed others against Defendant and all of his lawyers and the third Nova Scotia Defamation suit which lies at the heart of this instant action.

following is contained in paragraph 21 encapsulates the meritless, vindictive nature of this coordinated campaign of litigation terrorism being conducted by Perret, Leary and Abel:[7]

> *Scott Sternberg, his law firm Baldwin Haspel, and Bobby Truitt, have all become ideological and actual adherents of The Slabbed Nation through acts of commission and omission. In particular they took part in formulating and publishing libellous (sic) words about Plaintiff, and in supporting the defamatory work of the Slabbed Nation.*

Plaintiffs in this instant action are simultaneously judgment debtors of Defendant Handshoe via ruling of this Honorable Court in the case *Trout Point et al v Handshoe 729 F. 3d 481.* In that action, this Court ordered Plaintiffs to pay $48,000 in justly awarded attorney fees to Defendant Handshoe. In response to that order of this Honorable Court, Plaintiffs filed suit in Nova Scotia against Defendant's lawyer in *Trout Point et al v Handshoe*, Jack "Bobby" Truitt, in an attempt to negate the judgment of this Honorable Court.[8] Worth noting in Paragraph 41:

> *Defendant Truitt has participated in and supported cyberbullying of Charles Leary and Vaughan Perret on Slabbed and Twitter in contravention of the Cyber safety Act and the mandatory and permanent injunctions issued by this Court.[9]*

---

[7] In May, 2014, the court in that action ordered Mr. Abel to post a $50,000 bond for costs or face dismissal of the class action.

[8] Perret, Leary and Trout Point Lodge v Truitt et al, Supreme Court of Nova Scotia, Civil Action 426076, filed April 7, 2014, which is attached as Exhibit 2.

[9] The injunction referred to by Plaintiffs in the Nova Scotia Action against Truitt has also been referred to by the Fifth Circuit Court of Appeals which wrote: "The injunction does not comport with even the most basic protections against prior restraints on speech in the United States." Trout Point et al v Handshoe 729 F. 3d 481. Instant Plaintiffs claimed in that action to not be seeking its enforcement while simultaneously serving it as late as March 2014 on Google and other of Defendant's U.S. based interactive internet service providers along with citing it the Nova Scotia court action against lawyer Truitt and the New Orleans CDC lawsuit against Henry Laird.

Leary, a pro se Nova Scotia litigant that has actually been allowed to represent the three Plaintiffs in their numerous Nova Scotia based SLAPP suits including their latest action against Mr. Truitt, concludes it with the following threat against Truitt:

> *The Plaintiffs pray for the requested relief, a Declaration that the Mississippi money judgement (sic) is not enforceable in this province whether owned by Mr. Handshoe or the Truitt Defendants. The Plaintiffs reserve their right to amend this Statement of Claim to pray for damages for the torts of cyber-bullying and defamation, and/or to declare the "Assignment of Rights & Claims" null and void under applicable law already referred to.*

Plaintiffs' along with Mr. Abel's intent on using both the U.S. and Canadian justice systems to harass and punish Defendant's lawyers for the mere act of legal representation cannot be gainsaid.  A plain read of these legal filings clearly indicates Plaintiffs have absolutely no regard for the previous orders of this Honorable Court and will resort to multiple, tortious abuses of process in order to avoid complying with this Court's orders. Put in the language of a legal layperson, Plaintiffs seek to receive all of the benefits afforded by the United States justice system without accepting any of the related responsibilities.

Finally, the Plaintiffs are clear in their legal malpractice suit against their former attorney Henry Laird their intent to inflict economic harm upon Defendant Handshoe, rather the pursuing justice in accordance with the law. In Paragraph 94 of their complaint for example, they cite Attorney Laird and Jones Walker for not making Defendant Handshoe pay half of the Nova Scotia Court transcription costs in their first SPEECH Act action, a cost which ultimately would have been awarded to Handshoe had he been made to bear that particular expense of litigation early on.  In Paragraph 95, Leary, Perret and Trout Point Lodge repeat this complaint against

Attorney Laird and the Jones Walker firm stating in reference to that first SPEECH Act action,

"And, the Jones Walker Defendants failed to have Mr. Handshoe pay for one half of the

transcription costs, as agreed upon, causing the Trout Point Plaintiffs to pay the full amount."

## IV. THE REASONABLENESS OF AMOUNT OF THE POSTED SECURITY VIEWED FROM THE PERSPECTIVE OF BOTH PLAINTIFF AND DEFENDANT.

Defendant is seeking a Bond for Costs in the amount of $3,500, which is reflective of his

good faith estimate of the expected expenses of this litigation he reasonably expects to bear. For

instance, the transcription cost incurred by Plaintiffs in the first SPEECH Act action was over

$2,000 alone. Removal fees already incurred by Defendant total $400.00. To the extent the

instant action resulted from over a year's worth of litigation in Nova Scotia complete with a

damages hearing that literally took two days, Defendant reasonably expects transcription costs

alone would range from a minimum of $5,000 to $6,000 in this instant case.

Worth noting, and out of an abundance of caution, Defendant has included no amount for

attorney fees in this instant Motion for Security of Costs as Plaintiffs' coordinated actions with

their Louisiana business partner Daniel Abel in suing Defendant's lawyers to create legal

conflicts and scare away potential counsel has indeed had the desired effect.[10] Therefore,

Defendant respectfully requests that should this Honorable Court deem this instant motion to be

meritorious, that it consider increasing the amount of security required of Plaintiffs should

Defendant Handshoe actually find competent legal counsel to represent him in this matter in

spite of the omnipresent threat of a retaliatory lawsuit in Louisiana or Nova Scotia Canada.

---

[10] One Mississippi lawyer consulted by Defendant, upon learning of the history of the litigation, asked rhetorically before declining to enroll on Defendant's behalf, "So, if I represent you I also will be sued?"

8

## CONCLUSION

Requiring Plaintiffs to post a cash or surety bond for the anticipated costs in the amount of $3,500 or an amount determined reasonable by the Court is proper to insure the costs in this instant action are satisfied as the factors cited in *Ehm* are present in this instant action. Should Plaintiffs decline to post Security for Costs within the time frame specified by the Court for payment, Defendant prays this action be dismissed without prejudice.

Respectfully submitted this 13th day of June, 2014,

_____

Defendant
Douglas Handshoe
214 Corinth Drive
Bay St Louis, MS 39520
(601) 928-5380
earning04@gmail.com

9

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, certify I have sent a true and correct copy of the foregoing Memorandum in Support of Motion for Security for Costs to the following via United States Mail:

> M. Judith Barnett, Esq.
> 1911 Dunbarton Drive
> Jackson, MS 39216
> Telephone: (601) 981-4450
> Facsimile: (601) 981-4717
> mjbarnettpa@yahoo.com
> *Attorney for Plaintiffs*

Respectfully submitted this 13th day of June, 2014,

_____
Defendant
Douglas Handshoe
214 Corinth Drive
Bay St Louis, MS 39520
(601) 928-5380
earning04@gmail.com