CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CASE NO.

2013-5029

DANIEL G. ABEL, INDIVIDUALLY AND
AS REPRESENTATIVE PETITIONER

VERSUS

DOUGLAS K. HANDSHOE, ANNE MARIE VANDENWEGHE,
JACK "BOBBY" TRUITT, PAUL VANCE, SCOTT STERNBERG,
BRODIE GLENN, BALWIN HASPEL BURKE & MEYER, LLC.,

DIVISION:   FILED

MAY 27 2013

DEPUTY CLERK
CIVIL DISTRICT COURT

I-15

FILED: _____

_____
DEPUTY CLERK

## ORIGINAL PETITION

Petitioner Daniel G. Abel, individually and as a Representative for all persons equally situated and effected by the actions of defendants certain of which defendants are domiciled in the Parish of Orleans and which actions and the harm arising from defendants' action was visited upon petitioners in the Parish of Orleans, and which Petitioner is a citizens of Louisiana and is of the age of majority and domiciled in the State of Louisiana, who avers on his own behalf individually and for all persons similarly situated and likewise damaged, the following facts and claims.

### Preliminary Statement

Defendants Douglas K. Handshoe, Anne Marie Vandenweghe, and Bobby Truitt have a history, habit, and practice of race-based and hate-engendered campaigns of libel, maliciously defaming public officials including many judges of the United States District Court for the Eastern District of Louisiana, as well as the Courts of the Civil and Criminal Courts of Orleans, the 24th Judicial District Court of Jefferson Parish, the United States Fifth Circuit Court of Appeal, and others, hiding behind

Page 1 of 47

blogger and commentor names asuming that their true identities would not be discovered. In fact most, if not all of their real identities have been discovered and are now known to both private parties and enforcement agencies. Counsel for Handshoe and Vandenweghe have facilitated these actions.

1.

Defendants Handshoe, Vandenweghe, and their counterparts in Slabbed Nation have launched racists attacks on Judge Lemelle of the Eastern District Federal Court and Kim Boyle, former president of the Louisiana Bar Association.

2.

Defendants have posted clips of African American film character Attorney Algonquin J. Calhoon from the television program "Amos & Andy" to suggest that local African American Attorney Robert Jenkins is a shyster, like the character Calhoon.

3.

Anne Marie Vandenweghe [and perhaps her husband] using [what they did believe to be] an anonymous blogger name: have called Kim Boyle a [the] "Sista of Satin".[1]

4.

Even co-defendant Scott Sternberg acting for Baldwin & Haspel as counsel for Handshoe, Vandenweghe, acknowledged to the federal court that Handshoe's language can be "offensive". Racist, bigoted, homophobic or any type of hate speech, is and always will be very much more than simply "offensive" [Abel v. Handshoe, EDLA, Case No. 13-88].

---

[1] Green, Lisa. African American English, A Linguistic Introduction. Cambridge University Press [2002] See: Pp. 134 et seq. Speech Events and Rules of Interaction in AAE [citing Abraham 1976, Smitherman 1977, Holton 1984 and Brasch 1981]. Professor Lisa Green is from New Orleans.

5.

Vandenweghe has told these same judges and many other persons to go F*** themselves ...

using what she presumed to be the less known but equally offensive French verb "enculer". It

pervades her postings, curious for a member of the Louisiana Bar.

6.

Once caught, defendant Anne Marie Vandenweghe-Boudreaux perjured herself in federal

court denying being any of the bloggers and espousing such hate-speech. However, a two year

tracking and analysis of the blogger texts and the identify of the ip and email addresses provided

through Court order has confirmed that defendant Anne Marie Vandenweghe is at least one of the

person blogging under certain of these names; her husband appears to be another. [Exhibit M - Abel

Affidavit Re Analysis of Blogger Identities].

7.

Time frames, online postings when compared with dates of certain actions later taken by

federal and state law enforcement agencies, suggest that defendants Vandenweghe and Handshoe

have admittedly disseminated confidential information arising during the course of federal and state

investigations of persons accused of and targeted with the commission of various crimes. As well,

they have fabricated information so as to make a number of private as well as public persons appear

to have committed such crimes, which accusations are defamatory per se.

8.

Statements made online and in subsequent legal documents and pleadings suggest that certain

attorneys including defendant Bobby Truitt are complicit in and have facilitated Handshoe and

Vandenweghe's defamation of the judges, other public officials, and private persons as well. While

Handshoe is a certified public accountant, Anne M. Vandenweghe is herself an attorney in these very

Courts, which Courts and whose very judges she and Doug Handshoe continuously mock and maliciously defame.[2]

9.

Anne Marie Vandenweghe and Douglas K. Handshoe have also attacked and defamed a large number of private persons under the delusional guise that their attacks are protected speech under the First Amendment of the United States Constitution. If such attacks were protected speech, there would be no law curative of defamation. Actually, their attacks are classic displays of sociopathic behavior. And the conversations conducted between numerous bloggers have in fact proven to be none other than Anne Marie Vandenweghe conversing with herself, under many "sock puppet" faces or seemingly with her husband co-defedant A.J. Boudreaux, who appears of the "Sock Puppet" video with her available and posted on YouTube. Plaintiff knows and shall reveal the identify of each blogger.

10.

Although Handshoe and Vandenweghe's vitrolic tirades against almost everyone are sociopathic, their libel and maliciously defamatory statements have caused actual damages to both public officials including the judges in this Court and other courts, and to private persons, including the representative plaintiff. They have demeaned the Courts and tried to cause these Courts to be held is disrepute in the community. Examples of Vandenweghe and Handshoe's attacks on these Courts and its officers are vulgar, offensive, and false to the extent that representative plaintiff will

---

[2] While zealous advocacy often requires counsel to disagree with and appeal the decision of a trial court, the Louisiana Rules of Professional Conduct adopted by this Court of the Eastern District, also require that "a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard for its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal official ...." Rule 8.2.(a).

Page 4 of 47

file them by manual delivery under seal upon order by the Court.

11.

History and Confirmation of Handshoe & Slabbed's Practice of Defamation

Thrice Found Guilty of Defamation

Three Courts and three private parties have been brought the facts and each has found Handshoe's statements to be defamatory.

A.   **Nova Scotia Supreme Court Justice Pierre Léon Muise** found that Handshoe has "posted information that is *prima facie* defamatory" [EDLA / 13-cv-88, Rec. d. 21-2, page 28, ll. 15-17 —Attached]. Nova Scotia Supreme Court Justice Muise held that Handshoe's "comments are meant to be defamatory and insulting. I will not reproduce them here. It is the type of expression that engenders harmful results such as discrimination and hatred. It is not the type of free expression that deserved protection and fostering" [EDLA / 13-cv-88, Rec. d. 21-2, page 29, ll. 10-16 —Attached]. [Exhibit H].

B.   **Federal Judge Louis Guirola, Jr.** held that:

The time line is not entirely clear from the record, but it appears that after Plaintiffs demanded the retraction from the Times-Picayune, the "Slabbed" blog was taken offline by the Times-Picayune's corporate parent, Advance Publications. Handshoe, apparently in reaction to his blog being taken offline, then began an internet campaign to damage Perret and Leary. Handshoe has published numerous entries on "Slabbed" about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist and homophobic. Handshoe has continued to use his reporting on "Slabbed" as a platform from which to allege a connection between Broussard's crimes and Trout Point Lodge. Among other things,

Handshoe has accused Perret and Leary of being involved in a scheme in which Broussard used a Canadian company to launder money proceeds of illegal activities in Jefferson Parish.

Although Judge Guirola found that the SPEECH Act precluded him from allowing enforcement of Trout Point, Leary, and Perret's Nova Scotia judgment in Mississippi, the court was using a Mississippi definition of defamation, which requires proof of falsity even for statements that are defamatory per se. Louisiana law is distinguishable as falsity is presumed for allegations that are defamatory per se. Judge Guirola also denied Handshoe's motion for an appeal bond, and found that there was no suggestion that the appeal of his decision was frivolous, being a case of first impression [Exhibit O].

C.    **Nova Scotia Supreme Court Justice Hood** (Trout Point Lodge Ltd. v. Handshoe, 2012 NSSC 245) found again and again in her decision that Handshoe had defamed Abel's business partners and his business with the same allegations targeted against Abel here. [Exhibit I & J]. For instance:

[85]     The defendant has persisted in his statements that Trout Point Lodge is somewhat connected to the Jefferson Parish corruption scandal and has benefitted financially from funds illegally obtained.  The defendant knows that the original story linking Mr. Broussard with Trout Point Lodge has been retracted and an apology published. In the face of this, the defamatory comments continued.  Mr. Handshoe has refused to apologize or retract and, in fact, has republished the original statements and says they are true.

[86]     In addition, he has alleged that the business is on the verge of bankruptcy and has received funds in Canada improperly.  All this has been done through the Internet, which has the potential to reach untold numbers of potential guests of Trout Point Lodge  throughout the

world. The defamation has gone on now for two years and there is no indication that the defendant intends to stop. The defendant's conduct throughout has been to attempt to destroy the reputation of the business.

Although this was a default judgment, Nova Scotia law required Justice Hood to make findings based on evidence in order to award aggravated and punitive damages. *Townhouses of Hogg's Hollow Inc. v. Jenkins, 2007 CanLII 6250 (ON SC)* summarizes Canadian law on damages assessment involving a default defamation fact pattern:

[12]    Where words are defamatory, damages are presumed and are awarded at large: *Hill v. Church of Scientology of Toronto*, 1995 CanLII 59 (SCC), [1995] 2 S.C.R. 1130 at para. 164 [*Hill*].  In the case of default libel proceedings, facts going to the extent of damages must be proved by the plaintiff: *Umlauf, supra* at para. 9.

This is not dissimilar to United States law: "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *See* United States v. Shipco Gen., 814 F.2d 1011, 1014 (5th Cir. 1987) (citing TWA v. Hughes,449 F.2d 51, 70 (2nd Cir. 1971)), *rev'd on other grounds*, 409 U.S. 363 (1973).

12.

Three Public Retractions and Disavowals of False Statements

A.    **Times Picayune**

On January 16, 2010:

The Times-Picayune published an unprecedented retraction with bold face headline, front page, above the fold [Exhibit N]:

Page 7 of 47

The Times-Picayune has published a variety of stories in print and online since Jan. 6 about an ethics complaint against former Jefferson Parish President Aaron Broussard claiming that he owns a Nova Scotia vacation lodge that he rented to parish contractors. The newspaper retracts publication identifying Aaron Broussard as having an ownership interest in Trout Point Lodge; asserting Trout Point Lodge was rented to Jefferson Parish contractors; indicating that Roy D'Aquila has any part in Trout Point Lodge ownership or management; indicating that Kempt Wilderness Lodge Services has any ownership or management relationship with Trout Point Lodge; and identifying a photo of the lodge online as "Broussard-lodge.jpg." The Times-Picayune apologizes for publishing this material.

On April 7, 2011, nola.com published another retraction:

**Retraction-Trout Point Lodge**

In January 2010, The Times-Picayune published several articles that mentioned Trout Point Lodge and its business dealings while discussing Jefferson Parish politics and the scandal in the administration of former Parish President Aaron Broussard. The newspaper retracts publication implying that Trout Point Lodge was involved in the scandal.

The newspaper believes there is no basis for making any implication that Trout Point Lodge, Limited or its owners, Daniel Abel, Vaughn Perret, or Charles Leary, were involved in any wrongdoing and, indeed, never intended to make any such implication. The Metropolitan Crime Commission complaint to the Louisiana Ethics Board about Broussard's vacation property in Nova Scotia in fact did not name or implicate any of them. The Times-Picayune apologizes for errors in its reporting regarding Trout Point Lodge and its owners.

**B.** **Fox8 News** on February 17, 2012, broadcast the following 4 separate times:

In January of 2010, Fox 8 News reported a story on whether contractors with Jefferson

Parish ever vacationed at former Parish President Aaron Broussard's investment

properties in Nova Scotia, Canada. In the story, we showed video of Trout Point

Lodge from its web site while reporting that Broussard owned investment properties

nearby. Broussard's properties are not part of Trout Point Lodge. Fox 8 News regrets any

implication that Trout Point Lodge was associated with a Metropolitan Crime Commission

complaint associated with the Broussard scandal [Exhibit O].

**C.** **Concrete Busters Retraction Entered Into Record by Judge Guirola**

Counsel for Concrete Busters who had copied defamatory states from slabbed and Handshoe,

have admitted such, provided a letter of retraction which Judge Guirola had filed in the record the

Mississippi Federal Speech Act action, and shall amend the complaint to exclude the defamatory,

false allegations from their amended complaint. Counsel put the Hon. Judge Louis Guirola, Jr. on

notice of the fraud visited upon his Court and he entered the Concrete Busters retraction and counsel

letter into the record of his matter as well [Exhibit D].

Jurisdiction & Venue

13.

Civil District Court for the Parish of Orleans has jurisdiction over these matters as certain of

the defendants are domiciled in the Parish of Orleans and as many of the actions which give rise the

claims took place in New Orleans and in this very Court [Exhibit A - Concrete Busters v River Birch

- Case No. 11-2129 "D"] including but not only the publication of alleged-fabricated crimes but the

setting forth of those fabricated crimes against petitioner in the Amended Complaint of the Concrete

Busters suit.

14.

The crimes alleged were fabricated by and provided to Concrete Busters by defendants Jack "Bobby" Truitt, Doug Handshoe, Anne Marie Vandenweghe and others [Exhibit B-Concrete Busters Retraction; Exhibit C-Slabbed's Online Advertisement and Notice of Official Law Firms: The Truitt Law Firm, LLC and Balwin Haspel Burke & Mayer, LLC].

15.

As recently as 9 May 2013, Handshoe and others put a video online at YouTube with photographs of Abel and others implying a complicity with public officials in crimes and acts of public corruption [Exhibit D - YouTube - With Background Track of Goliardic Poem *O Fortuna* - Law Firms of Baldwin & Haspel and Truitt given credit by Handshoe for making the film possible]. Vandenweghe and Handshoe published an earlier YouTube video which has puppet photographs and voices which prove that defendants Anne Marie Vandenweghe and her husband Alan J. Bourdreaux are "Sock Puppets" who blog anonymously [though now identified] attacking Abel, federal and state court judges, and many many others Exhibit E].

16.

Handshoe and Vandenweghe have admitted on numerous occasions the existence of what they term "The Slabbed Nation." There is in fact a network of individuals that believe they have an absolute right to "free speech," that encompasses a right to defame, cyberstalk, and harass. Each one is a concurrent joint tortfeasor in defamation with the other. Empowered by the Internet, their efforts constitute a campaign of defamation, what the federal district court for the southern district of Miss termed a "campaign to damage."

17.

Their actions are underpinned by a false ideology that they are "investigative bloggers" on the path of political corruption, and this in turn justifies their illegal and unethical defamatory activities, targeting whomever challenges their reign of libellous publications, in particular the Plaintiff and his business associates Charles Leary and Vaughan Perret.

18.

In the process, the SlabbedNation publishes literally thousands of blog posts and comments that form an uninterrupted series of publications. To fully understand the implication and meaning of their defamations, each defamation must therefore be read in context. Each publication referring to the Plaintiff on Slabbed or elsewhere on the Internet thus constitutes a new edition of the blog.

19.

Defendant Handshoe's attorneys, as well as attorney Vandenweghe, have themselves become ideological adherents to and members of the Slabbed Nation, and have committed acts that make them concurrently jointly liable for all the defamation.

20.

The unceasing series of publications contain a great deal of defamatory innuendo and implication, the stings of which include the following:

- that Abel's businesses Trout Point Lodge and Cerro Coyote were truly not legitimate entrepreneurial enterprises, but were funded by the ill-gotten gains of Aaron Broussard and Jefferson Parish corruption

- that Trout Point Lodge as owned and administered by Abel was used to funnel kickbacks in violation of federal law

- that Cerro Coyote as owned and administered by Abel was used to launder money

Page 11 of 47

- that Trout Point Lodge was under federal criminal investigation
- that Abel was a member of Nova Scotia Enterprises, identified by federal authorities as a Louisiana LLC involved in a criminal enterprise
- that Abel and his businesses were part of a criminal RICO enterprise
- that there is a vast criminal conspiracy involving Abel and in which Abel participates, and that part of that conspiracy is an international scheme to silence investigation of the above criminal activities through the use of civil legal process

21.

Scott Sternberg, his law firm Baldwin Haspel, and Bobby Truitt, have all become ideological and actual adherents of The Slabbed Nation through acts of commission and omission. In particular they took part in formulating and publishing libellous words about Plaintiff, and in supporting the defamatory work of the Slabbed Nation.

22.

This is evidenced by the notices published on the Slabbed web site and by the May 9 defamatory YouTube video crediting Baldwin Haspel and Truitt with assistance in the video's production. The video, which repeated in visual form the defamatory stings articulated above, specifically credited Sternberg, Glenn, Vance, and Truitt.

23.

It is also evidenced by publications such as Bobby Truitt's email message to Leary & Perret's Miss. counsel, which constitutes publication:

I know that your clients are attempting to expand the record on the back of Danny Abel's letter to Judge Guirola, but I wanted to apprise you of the attached order in a somewhat related case. Judge Morgan will, no doubt, sanction Mr. Abel for abuse of the discovery

process. When she does, and if your clients persist in attempting to enlarge the record, I will

be required to point out to the U. S. Fifth Circuit the innumerable times that Mr. Abel has

been sanctioned by that Court, as well as other Federal District Courts.

I ask that you be guided accordingly.

24.

In fact, Abel was not sanctioned, and it is defamatory to state as a fact that Abel would be

sanctioned for abuse of process, and that the federal district and appeal courts would find Abel's

conduct so egregious as to prejudice their decisions in the Handshoe SPEECH Act litigation.

25.

Acts of omission included failing to prevent Handshoe from continuing his uninterrupted

campaign to damage during civil litigation in both Louisiana and Mississippi, and lending their name

to his defamatory campaign, or at least failing to object to the use of their names.

26.

The You Tube video evidences that Baldwin Haspell, Paul Vance, Scott Sternberg, Brodie

Glenn, and Bobby Truitt have all crossed the border beyond acceptable advocacy to become

ideologically committed members of Handshoe & Vandenweghe's "Slabbed Nation." In fact, they

became participants in the defamation practiced by the Slabbed Nation, including the production of

the May 9, 2013 You Tube video, as admitted by Handshoe.

27.

The facts that both Baldwin Haspell and Bobby Truitt advertise on Slabbed as the official

Slabbed law firms further evidences their participation in the "Slabbed Nation" endeavor, as is also

evidence by other communications made by Sternberg and Truitt which shall be offered in evidence

at trial on this matter or prior to that at the requisite hearing.

Page 13 of 47

28.

Even co-defendant Scott Sternberg as counsel for Handshoe, Vandenweghe, and Scott
Sternberg for Baldwin & Haspel acknowledged to the federal court that Handshoe's language can be
"offensive". Racist, bigoted, homophobic or any type of hate speech, is and always will be very
much more than simply "offensive" [Abel v. Handshoe, EDLA, Case No. 13-88]. CLEAN THIS UP

29.

In February of 2013, Handshoe wrote the Supreme Court of Nova Scotia telling them that
federal law enforcement agents in New Orleans consulted with him and told him to report Abel to
the law enforcement agencies in Canada. Abel has spoken with the agent in New Orleans confirming
that what Handshoe wrote the Nova Scotia Court is not true [Exhibit F & F.1 - Abel to SA Cataldi;
Exhibit G - Handshoe to Justice Muise in Nova Scotia].

30.

Abel's business partners have met with law enforcement agencies in Nova Scotia about the
hate-speech published by Handshoe and slabbed.org which the Supreme Court of Nova Scotia has
now enjoined from publication finding it constitutes hate-speech [Exhibit H - Justice Hood Order,
Exhibit I - Justice Hood Reasons, Exhibit J - Justice Muise Order]. Federal Judge Guirola of the
Southern District of Mississippi has also found over fifty examples of defamatory speech concluding
that Handshoe has conducted a campaign to damage [harass and embarass] against Abel's business
partners [Exhibit K - Guirola].

31.

Abel discovered and sent to Guirola a letter explaining defendant Bobby Truitt's fabrication
of facts and crimes used to influence the Mississippi Court in making its decision in the Speech Act
case - Exhibit L.]

Page 14 of 47

32.

Handshoe and his anonymous bloggers have recently posted photographs of Abel, Perret, and Leary stated that they wish that they "were dead" and that someone should be hired "to take care of them". These threats take defendants' action beyond defamation, substantially.

33.

**NAMED DEFENDANTS ARE:**

A.   Defendant Douglas K. Handshoe is a certified public accountant and at all times relevant a resident of Bay St. Louis, Mississippi.

B.   Defendant Anne-Marie Vandenweghe *aka* Anne-Marie Boudreaux is an attorney registered with the Louisiana State Bar Association and at all times relevant is domiciled at 15 Colonial Lane, Harahan, Louisiana.

C.   Defendant Jack "Bobby" Truitt is an attorney registered with the Louisiana State Bar Association and at all times relevant was domiciled in St. Tammany Parish, State of Louisiana.  Truitt fabricated alleged crimes and used such in an abuse of process and in violation of the provisions La. C.C. art. 1953 and La. C.C.P. art. 863.

D.   Defendants Paul Vance, Scott Sternberg, and Brodie Glenn are attorneys registered with the Louisiana State Bar Association and at all times relevant an associate of co-defendant Law Firm Baldwin Haspel Burke & Mayer, LLC, domiciled in the Parish of Orleans, State of Louisiana. Using their own and the resources of their law firm, they conspired with Handshoe and slabbed.org to harm and have harmed petitioner and others whose claims shall be added accordingly.

E.   Defendant Baldwin Haspel Burke & Mayer, LLC, is a limited liability company licensed with the Louisiana Secretary of State, domiciled in the Parish of Orleans,

State of Louisiana. Attorneys for Handshoe and slabbed.org have used the resources of their law firm, conspiring with Handshoe and slabbed.org to harm and have harmed petitioner, judges, and other private and public persons in the manners set forth herein.

### History, Habit, and Practice of Libel and Defamation

34.

Anne-Marie Vandenweghe and Doug Handshoe a history, habit, and practice of libel and defamation set forth with particularity below.

35.

The defendants are, since January, 2010, co-publishers of the Slabbed blog, which currently has the url slabbed.org.

36.

Defendants published false statements about representative plaintiff Abel and many others, on a public Internet blog with either actual malice or that the statements were defamatory per se, accusing him and others of criminal acts, professional incompetence, and moral turpitude.

37.

Representative plaintiff Abel and many others were injured as a result.

38.

The statements published by the defendants harmed the representative plaintiff's reputation, lowered him in the estimation of the community in which he lives and works as an attorney, and deterred others from associating or dealing with him. Plaintiff Abel was exposed contempt or ridicule due to the Defendants' Internet publications. Handshoe and Vandenweghe have done the same and caused the same damages to many other citizens both public and private persons in the State of Louisiana.

39.

Defendants' words both expressly and implicitly accused the representative plaintiff and countless others of criminal conduct, and by their very nature tended to injure the plaintiff's personal and professional reputation as an attorney, without considering extrinsic facts or circumstances, and are thus defamatory per se.

40.

The site through which defendants publish, on slabbed blog is not media and defendants are not journalists.

41.

The representative plaintiff is not a public figure, and his private life and private business dealings are not a matter of public concern.

42.

Defendants have committed multiple acts of defamation, a cause of action for defamation that arises out of a violation of Louisiana Civil Code article 2315. Such a violation constitutes a breach of duty, or fault, and may be actionable under C.C. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

43.

In addition to the explicit statements that are defamatory per se of the Plaintiff, defendants repeatedly defamed Plaintiff by implications that are also defamatory per se. This included, but is not limited to, publishing false and injurious statements about Plaintiffs' business enterprises as well as by publishing a photograph of Plaintiff juxtaposed with defamatory allegations.

44.

Representative plaintiff was formerly (before February, 2007) an officer & director of Trout

Point Lodge and remains a co-owner. He is closely associated with the public reputation of Trout Point Lodge. For instance, he is a co-author of the Trout Point Lodge Cookbook: Creole Cuisine from New Orleans to Nova Scotia (Random House, 2004).

45.

Representative plaintiff is an officer of Cerro Coyote, S.A., which developed, owned, and operated the Inn at Coyote Mountain. He is closely associated with the public reputation of Cerro Coyote.

46.

Representative plaintiff was during the 1990s a co-owner of the Louisiana enterprise known as "Chicory Farms," and was closely associated in the public eye with that business.

47.

Defendants have since January, 2010 and <u>as recently as 14 May 2013</u> repeatedly made publication linking Plaintiff's reputation with all 3 businesses in publications that state those businesses are involved in criminal activity while under the direction or ownership of plaintiff.

48.

Representative plaintiff has discovered that the defendants published using anonymous pseudonyms and multiple identities. Defendant Handshoe has admitted: "I tried my hand at the dark arts of Sockpuppetry. I've since become accomplished at said Dark Art." Unless proven otherwise, Defendants are jointly liable for publishing all of the following words about the Plaintiffs, and for all posts and comments on the Slabbed blog, whether detailed in this complaint or not.

49.

In addition, Defendants conspired to defame plaintiff. Internet publishers that conspire with original content providers to defame are not covered by the immunity provided by title 47 United

States Code section 230(c)(1) and (e)(3). In the case of the Slabbed blog, the user of the interactive computer service is in a conspiracy with the information content providers. Section 230(c)(1) applies only to information provided by another content provider. There was no authentic transfer of information between the two defendants, or between the defendants and third parties. The defendants possessed a preconceived plan and unity of design and purpose to defame the Plaintiff and his businesses.

50.

The following words are of and concerning the Representative plaintiff, were published on a publicly available blog with wide distribution and readership in the Plaintiff's home community, and are false:

On January 10, 2013, Defendant Handshoe published a post entitled "Slabbed Investigates: Continued had times at the Legal Department at the Super 8 Motel on Clearview." Immediately below that headline was a photograph of plaintiff published in violation of copyright by defendants.

51.

In that blog post, Handshoe published: that "Travel media in Canada" were "taking payola for promoting Aaron Broussard and Danny Abel's business interests at the resort at Trout Point in Nova Scotia." In general, the commencement of the post implicates that Plaintiff was involved in a massive coverup and manipulation of media with admitted felon Broussard. The post is defamatory per se.

52.

It is untrue that Plaintiff had business interests with Aaron Broussard at Trout Point. It is untrue that Plaintiff engaged, with or without Broussard, of any coverup of wrongdoing or corruption. It is untrue that Plaintiff paid in any, way, shape or form to manipulate Canadian media,

Page 19 of 47

or any other media.

53.

Later, in the same post, Handshoe refers to Plaintiff:

So why is Danny Abel's name important to this story. Mainly because the brand of law he

practices is straight from the shit house as Slabbed once again illustrates how the guy would have

never made it in the legal profession period had it not been for his associations with Wendell

Gauthier and Aaron Broussard. The statement above is defamatory per se.

54.

On April 18, 2012, in comments to the post "River Birch Landfill: Anatomy of Corruption. A

Guest post by Whitmergate" Vandenweghe tag teamed comments with Handshoe to impute

Plaintiff's involvement in money laundering for Jefferson Parish political corruption. This

defamatory innuendo was repeated in a post entitled  To amplify a point 'Gate and I are

making.........."

55.

On February 5, 2012, Vandenweghe as viewfromhell published the following 2 comments:

What the fuck is going on around here. I leave this hellhole for a while only to comeback to find out

that Broussard and his thugs have dug a tunnel to some fucking cocksuckers' hellhole in Nova

Scotia. There's no communication down in Yalapa so it's taken me a few days to get the hang of

what's up. If these punk-ass fucking faggots think they are going to take up from where TheRiot ran

away from they are more fucked up then they have shown themselves to be so far.

56.

I'm a New York Times rock star of free speech and these MFers aren't ready for me. Sue ?

They can bet their asses that my NOLA posse is going to be there at whatever Courthouse to load

some papers down their throat. I haven't talked to 'Gate and his family and crew yet but I gotta

believe they're going to join in with me in some legal action of their own.

57.

I think Sop may be on to something that these doofus douche bags may be acting in concert

with these political thugs in JP in further retaliation of certain people who blew the doors open about

Whitmer's bullshit, payroll fraud, River Birch, Hubbard and a load of other corruption shit.

And that settlement that the T-P made with these fraud freeks still stinks of Chuckie's cheese from

here to Canada.

58.

Hiding from us won't be an option once these assholes make an appearance in Court. This

ain't no fairy tail jurisdiction like Nova Scotia.

59.

This publication accuses plaintiff of being admitted Broussard's thug. It further accuses

plaintiff of involvement in criminal retaliation for the alleged uncovering of wrongdoing, including

prominently political corruption.

60.

On January 22, 2012 Vandenweghe as Whitmergate published a comment:

Sop… you not only deserve Kudos, but a Journalistic Award for your catch at "TROUT POINT"…

All of which begs the QUESTION: Is the Times-Picayune going to file pleadings to set aside the

settlement entered into with "Trout Point" based upon Trout Point's fraudulent representations that

they had no relationship with Aaron Broussard ? A relationship that we now know to be a fact, and

would negate any of their nefarious claims for damages.

It would appear that the law firm representing the Times-Picayune failed to perform due

diligence. And it is this lack of due diligence by a number of LAW FIRMS associated with the "Jefferson Parish Scandals" (Phelps, Dunbar and Gaudry, Ranson) that is becoming increasingly suspect !!!

This publication directly implicates plaintiff's involvement in fraud involving settlement with the Times-Picayune.

61.

Later in the same post, Handshoe published:

At this point I must point out that there has been one media outlet that has stayed on the case of Aaron Broussard and his band of grifting Goatherders and that would be Slabbed Newmedia While Steve Newhouse's Times Picayune and Fox 8 ran from these SLAPP happy nut jobs like scared schoolgirls Slabbed remained hot on the trail following leads, despite the threats, bringing this aspect of the massive scandal in Jefferson Parish home.

62.

Defendants refer to plaintiff as someone who threatens and files intentional lawsuits against public participation of a matter of public interest. Defendants imply that there is a scandal or coverup underway involving plaintiff, and that there is indeed something for defendants to investigate. Defendants refer to plaintiff as a grifter. All of this is defamatory per se and untrue.

63.

Defendant then published a video clip of a retraction broadcast by WVUE Fox 8 News regarding their misidentification of Trout Point Lodge being involved in the Broussard corruption scandal. Defendant implied that the retraction was untrue, coerced, and/or nefariously obtained. This is untrue and defamatory per se.

63.

On January 7, 2013, Defendant Handshoe published: "I've got more coming on the US taxpayer fleecing that was Chicory Farms."

64.

This is an accusation of criminal fraud involving U.S. Department of Agriculture research grants received by Chicory Farm. It is untrue that Chicory Farm "fleeced" the federal government, which is defamatory per se.

65.

On January 3, 2013, Defendant Handshoe published at slabbed.org:

Folks, like I said last month I've maybe shown 10% of the accumulated jackassery inflicted upon the journalism profession by Eco Libel Terrorists Vaughn Perret, Charles Leary and Danny Abel of Trout Point Lodge near East Kempt Nova Scotia.

66.

Plaintiff Abel is not a terrorist of any kind, and has not inflicted any harm, injury, or deception upon journalists or the news media.

67.

On October 5, 2012, Handshoe published:

There is gonna be more folks as I do not think <u>Aaron Broussard has been completely forthright in his squeal-a-thon</u> with the United States Department of Justice, especially the intersection of the <u>"Legal Department at the Super 8 Motel"</u> on Clearview Parkway to Broussard's business enterprise in Costa Rica, <u>Cerro Coyote, SA</u>, which a reasonable person would conclude laundered Broussard's ill gotten gains based upon the written statements of Broussard's business associates, Charles Leary, Vaughn Perret and Daniel "Danny" Abel. I'm within inches of <u>tying the whole sordid affair</u> together.

68.

This publication implies that Aaron Broussard, who has plead guilty to federal felonies, would have information about representative plaintiff engaging in federal crimes that he could tell to the U.S. Department of Justice. This is untrue.

69.

The publication further states that Cerro Coyote belongs to Aaron Broussard and was involved in criminal activity, which is untrue. Such a statement would implicate the Plaintiff in criminal acts, as he is an officer of Cerro Coyote.

70.

The Plaintiff is not involved in any sordid affair involving Aaron Broussard, including alleged or actual political corruption.

71.

On December 4, 2012, Handshoe published:

Conflicting legal positions contrived to satisfy the moment is a common theme with Abel, Leary and Perret.

72.

This statement implies that Plaintiff Abel, an attorney, has engaged in unethical conduct such as "contriving" legal positions, which is untrue.

73.

On November 13, 2012, Handshoe published:

Abel and Broussard were the "legal department" at Desai's Super 8 Motel. Desai, via his parents, also owns property at the Trout Point Resort in Nova Scotia along with a bevy of highly politically connected Louisianans, the Lodge itself at the resort being owned by Abel, Leary and

Perret. The resort has been mentioned in Federal Court filings as a bribery conduit for Broussard, an allegation to which he copped a plea. In light of a couple of new friends that I have made over the past couple of months and all the ties the gang has to each other that literally span the world, it did not surprise me when sources familiar with the operations of the legal department at the Super 8 Motel disclosed to Slabbed that Desai was a frequent traveler to Costa Rica and his visits included stops at the Inn at Coyote Mountain aka Cerro Coyote SA.

Of course there is more so please stay tuned because Slabbed is on the verge of breaking this bad boy wide open. Oh boys......

74.

It is untrue that Plaintiff's business Trout Point Lodge was mentioned as a bribery conduit by the U.S. Attorney or anyone else, except the Defendants. It is untrue that Broussard plead guilty to using Trout Point Lodge or any other Nova Scotia property as a conduit for bribes. The Plaintiff is not part of a "gang" involving Broussard. Nick Desai has never visited or stayed at the Inn at Coyote Mountain. There is no story of criminality to "break open," just the conspiratorial imagination of the Defendants. 75.

In total, the above publication implies the Plaintiff's deeply rooted involvement in political corruption, deception, and money laundering---none of which is true.

76.

On November 9, 2012. Handshoe published:

Last night after the 6pm WWL TeeVee newscast I started getting emails from segments of

the local legal community that know the walking lawsuits that are Attorney Danny Abel and his

"son" Shane Gates. Now I'll grant it is not unusual for a practicing lawyer to be associated with

lawsuits but Abel practices a curious version of the law indeed and wore many hats, from being

Nipun Desai's staff attorney at the Super 8 Motel to Aaron Broussard's law partner at the Super 8

Motel on Clearview.  Gates, along with Abel business associates Charles Leary and Vaughn Perret

often served as Abel's in-house plaintiffs for his lawsuits but before I get to all that we need more

background for you newbies reading this.

77.

This publication is defamatory in a number of regards. First, it implies unprofessional

conduct on Plaintiff's part as an attorney, and that he engages in frivolous lawsuits. Second, Plaintiff

has never been Aaron Broussard's law partner or business partner. Broussard is an admitted felon,

and this implicates Plaintiff in knowledge or commission of federal crimes. Third, Plaintiff does not

have "in-house plaintiffs," which again implies unprofessional or fraudulent conduct on the part of

an attorney. All such implications and innuendo are untrue.

78.

On December 28, 2012, Handshoe published: "Finally Danny Abel is having money trouble

himself folks. It will get its own post . . ."

79.

This publication directly impugnes Plaintiff's reputation and would tend to lower the esteem

he enjoys. Plaintiff does not have "money trouble", except for his generosity to clients and other

Page 26 of  47

persons.

80.

On September 12, 2012, Handshoe published:

Folks what I could never figure out was why Aaron Broussard was marketing those overseas
travel investments for Danny Abel, Vaughn Perret and Charles Leary and I still do not know the
why, but I got me the smoking gun today and will publish it soonest along with some other dynamite
documents I also nabbed today.

It is my hope that all the perpetrators to this massive political corruption enterprise that
Aaron Broussard led are called to account.  I know I'll be doing my level best to facilitate that
process.

81.

Aaron Broussard has never marketed overseas investments for Plaintiff. The above
publication implicates Plaintiff's involvement in a "massive political corruption enterprise" and that
Plaintiff can be called to account for criminal wrongdoing.

82.

There is no evidence to find of Plaintiff's criminal wrongdoing, and Defendants have no
"smoking gun" evidence. Defendants statements and implications about Plaintiff are false.

83.

On September 11, 2012, Handshoe published a blog post entitled: "Let's talk a bit more about
Aaron Broussard's 'evidence of other crimes' involving the resort at Trout Point Nova Scotia and the
use of SLAPP suits by his business associates in Canada."

84.

The "resort at Trout Point" refers to Plaintiff's business Trout Point Lodge in the context of a criminal court filing by the New Orleans U.S. Attorney's Office. Trout Point Lodge was never mentioned or implicated in this or any other such court filing, and was never implicated in evidence of other crimes by Broussard. Plaintiff has never engaged in a strategic lawsuit against public participation involving Defendants.

85.

In that post, he published:

After reading Drew Broach's piece and the latest filing by the federal prosecutors in the bribery case involving disgraced former Parish President Aaron Broussard I came away with the distinct feeling I had seen the name of his original Louisiana based LLC set up to accept bribes from Parish contractors that went to buy real estate at the Trout Point resort, Nova Scotia Enterprises, LLC. The connection is Broussard's long time associate and part owner of the Lodge at Trout Point, Danny Abel but Abel's name does not show up in the Team USA legal filing, rather we have a redacted list of the original investors. There is some interesting things in the redacted ownership document that was presented to the court however and I bet Slabbed can shed some light on the names which were redacted from the court filing. To set things up though I feel compelled to point out the Times Picayune trail blazed this topic, was SLAPP sued in Nova Scotia by Broussard's property managers Charles Leary and Vaughn Perret who are Abel's business partners that are based at the Lodge. Val Bracy at Fox 8 also had a great report on the topic which was retracted earlier this year as part of the SLAPP suit settlement in Nova Scotia filed by Leary and Perret. Through time I

Page 28 of 47

have also learned this same bunch has availed themselves of Canada's defamation laws against

several Canadian media outlets such as the Rural Delivery, which did an excellent expose on Leary,

Abel and Perret's attempted fleecing of the Atlantic Canada  Opportunities Agency among others.

I have also been SLAPP sued by this same bunch in Canada but continued to investigate the

topic of Broussard's use of a real estate development in Canada to launder the alleged bribes that

were paid to him.  This litigation is currently awaiting a ruling by US District Court Judge Louis

Guriola. They have also repeatedly threatened a new media journalist in the Town of Shelburne

Nova Scotia for reporting on the court case they filed against me among other things for they simply

do not want this topic discussed.

86.

The above publication is defamatory of the Plaintiff in a number of aspects. First, Defendants

implicate Plaintiff as being the "connection" between felon Broussard and a criminal enterprise.

Second, Defendants implicate that Plaintiff was one of the owners of Nova Scotia Enterprises (NSE),

a Louisiana limited liability company, and that Plaintiff's name was redacted from ownership

documents by the U.S. Attorney's Office. This is defamatory per se because the U.S. Attorney's

Office had stated in public court filings that Broussard used NSE to engaged in criminal wrongdoing.

Third, Defendants imply that the retracted publications of the Times-Picayune were actually true.

Fourth, Defendants again implicate Plaintiff in the filing of an illegal or unethical SLAPP suit. Sixth,

Defendants imply that retractions broadcast by WVUE Fox 8 News were actually true, and that Fox

8 was illegally un unethically strong-armed by Plaintiff to issue the retraction. Seventh, this

publication states that Plaintiff and/or his business partners have sued Canadian media. Eighth,

Defendants state that Plaintiff was accused of fleecing a federal Canadian lending agency. To fleece means "to strip of money or property by fraud or extortion." Ninth, Defendants imply that there is something substantive to investigate regarding Plaintiff's involvement in money laundering. Finally, Defendants implicate Plaintiff's involvement in threatening journalists.

87.

All the above statements of fact, implications, and innuendo are untrue. Plaintiff has never connected Broussard to anything in the context of a criminal undertaking. Plaintiff is not and never has been a member and/or owner of NSE. Plaintiff's name does not appear in NSE ownership documents and his name was never redacted by federal authorities.

88.

Retractions by the Times-Picayune and Fox 8 News were legitimate and true, and intentionally ignoring or misrepresenting the truth of underlying sources evidences actual malice on the part of Defendants. Plaintiff has never filed a SLAPP suit against media or been involved in such a suit. Neither Plaintiff nor his business partners have ever sued Canadian media; likewise neither plaintiff nor his business partners were accused of extorting ACOA, and the litigation with ACOA—in which there were counterclaims-- was amicably settled at all relevant times. Plaintiff has never been involved in money laundering, whether involving Aaron Broussard or anyone. Plaintiff has never threatened journalists.

89.

Handshoe continued to publish:

Page 30 of  47

So ol' Roy was a member of NSE and surely Leary and Perret knew all about the company as this exhibit to their SLAPP defamation case against Fox 8 illustrates. I think we can figure out the other owners a couple of different ways, the first being by illustrating those local people that inserted themselves into Leary and Perret's Canadian SLAPP suits against the US media:

David Loeb

Danny Abel

Bennett Powell

And really this is just a start for there are others as well.

89.

It is untrue that plaintiff was involved in any way in a SLAPP suit against U.S. media, and, again, Plaintiff was never a member of NSE, which implicates the Plaintiff in federal crimes. Plaintiff and his business partners were never involved in any attempt to cover up wrongdoing. On information and belief, David Loeb was never a member of NSE. The plaintiff has no knowledge of Bennett Powell.

90.

On March 2, 2012, Handshoe published:

Long story short is with Broussard out of commission these days, his shadow law partner Danny Abel had to take up Broussard's slack including at Coastal Shoring, where Kershenstine took a $30,000 HGMP down payment and did not follow it up with requested paperwork. The homeowner was kicked from her position in the program and put at the end of the funding list which in turn

caused her to ask for her money back.  Kershenstine refused.

Normally the Goatherders like to go on the attack even if it is ill-advised but in this case the homeowner beat them to the punch pressing criminal charges against Kershenstine for fraud.  As is his wont Abel attacked the victim by issuing a subpoena to her despite the prohibition against pre trial subpoenas of crime victims, employing a legal strategy that is most charitably described as unconventional but most lawyers recognize as shithouse lawyering. This while Abel was unsuccessfully trying to quash a State subpoena on Coastal's bank accounts where the victim's HMGP money allegedly resides these days. Something tells me Kershenstine is in big trouble these days…..but he is not the only one.

91.

Plaintiff was never Aaron Broussard's law partner, shadow or otherwise. Defendants refer to Plaintiff as a "goatherder." Plaintiff does not engage in shithouse lawyering, engage in ill-advised legal tactics, or attack victims.

92.

On February 3, 2012, Handshoe published:

I called them out for lying about Abel as he had no law office in New Orleans in 2005 instead practicing law with Aaron Broussard out of the Super 8 Motel on Clearview Parkway in Metairie before moving to the offices of Dr Manuel Mariano De La Rua on Williams Blvd in Kenner when Broussard filed suit against author Peter Brown on Danny Abel's behalf on July 11, 2011. For those keeping score, Abel is the owner of Trout Point Lodge who still lives in New Orleans area that often affiliates with Broussard in civil legal matters. Abel and his girls are known down here as

Page 32 of 47

professional plaintiffs dating to their days working for Wendell Gauthier.

93.

Commenting as Whitmergate on September 16, 2011, Vandenweghe published a comment that stated, in part:

Slabbed, through it's host Doug Handshoe, has been the First Responder for those of us whose voice of criticism has continually been under assault by the unconscionable practices of the large insurance companies and their cache of defense lawyers; the most corrupt of parochial Governments, Jefferson Parish and it's Officials who reign there; and a web of individuals, lawyers and businessmen alike, who believe that they are above the law as they trample upon the less fortunate.

This publication directly implicates Plaintiff, and through innuendo, in participation in a massive conspiracy of corruption and coverup, and of being a person who thinks himself above the law.

94.

On February 1, 2012, Handshoe published:

NRB Abel and the girls are nuts. They still think Broussard is gonna skate. Post Turtle has it nailed. I won't say anything further lest it be construed that I am bragging. Sop

Plaintiff's business partners are not girls. Neither plaintiff nor his business partners have ever commented publically on Broussard's guilt or innocence and have never interjected themselves into any public controversy connected to Broussard. Plaintiff is not insane [or nuts].

**Page 33 of 47**

95.

On January 26, 2012, Handshoe published a "comment" post:

Oh I think the girls will be be soiling the panties when they talk to the authorities alright. Remember what Stephanie Grace said last week in her column? Team Fed included the Nova Scotia references for a reason. How long do you reckon people like D'Aquilla and Abel have been talking on a party line?

I don't pretend to know all the answers but we're finding enough to understand why Team fed included that language in Karen Parker's Bill of Information.

96.

This publication implies that federal authorities such as the FBI would have a wiretap on Plaintiff's phone because they suspect his involvement in criminality.

97.

On January 24, 2012, Handshoe published:

In part 1 of this series I covered the genesis of Trout Point development and the associated fleecing of the ACOA by our three amigos Danny Abel, Vaughn Perret and Charles Leary. The fallout was slow in developing though as certain employees at the ACOA that were involved with the La Farme D'Acadie disaster actually died in the interim and the ACOA was not especially diligent in pursuing repayment of the tax money given to the 3 American partners. When the ACOA filed suit Trout Point did not contest it and a default judgment was entered.  Later the default was set aside and the litigation began a tortuous path in the Canadian court system. It came to a

Page 34 of  47

head in 2008.

98.

Plaintiff never "fleeced" ACOA and was not involved in a "disaster." Trout Point Lodge was never a party to litigation with ACOA and was never defaulted in any lawsuit. Trout Point Lodge was never associated with fraud or extortion involving ACOA or anyone else. Again, the conflict with ACOA was amicably settled before Defendants ever began their per se defamatory publications, a fact Defendants intentionally fail to mention.

99.

In a post written on April 11, 2011, and published on slabbed.org in the 2nd week of February, 2012, Handshoe published:

Of course as we saw from Paulsen v State Farm Abel's abilities as a lawyer are not what they once were as he resorted to trickery and deceit in the conduct of that case.

100.

Plaintiff has never engaged in trickery and deceit as an attorney. This statement is defamatory per se.

101.

In that same post, referring to Plaintiff and his business associates, Handshoe published: "Simply put this bunch of guys provide us with fertile ground for examination as their path of destruction through life gives us some clues as to some of the longer term players in Aaron Broussard's professional career."

102.

Plaintiff was never engaged in a path of destruction, and in fact Plaintiff's businesses have created employment and positive economic spinoff. Plaintiff was not a long-term participant in

Page 35 of 47

Aaron Broussard's career as Jefferson Parish Chairman and President.

103.

Defendant Handshoe repeatedly refers to Plaintiff as one of "the girls."

In a post written August 17, 2011, and published in the 2nd week of February, 2012,
Handshoe published about an article written by Matt Labash:

Matt clearly has great sympathy for the plight of the City as did the nation and his attempt to make
up for his earlier, factually correct "hit piece" reveals more about the girls that this blogger could
have ever hoped to find in one place and we see evidence of how the girls work as a unit to grift their
way through life.

104.

"To grift" is defined as "to obtain (money) illicitly (as in a confidence game)" and "to acquire
money or property illicitly." Plaintiff has never engaged in the illicit acquisition of money or
property. This is defamatory per se.

105.

In the same post, referring to Plaintiff, Defendant Handshoe published that Abel "simply took
too many shortcuts in their litigation and in the case involving famous local media personality Eric
Paulsen took ethical liberties that would make the Oxford based insurance defense bar blush and that
folks is saying something."

106.

Again, Plaintiff never took shortcuts or ethical liberties as a lawyer. This directly injures
Plaintiff's professional reputation and is defamatory per se.

107.

In a post written on October 11, 2011, and published in the 2nd week of February, 2012,

Defendant Handshoe published:

Along those lines I'd like to point out one of <u>my early bell cow posts on Jefferson Parish Political Corruption included Camp Dresser along with Aaron Broussard's legal sidekick Danny Abel</u> who sometimes also claims to own part <u>Trout Point Lodge</u>. We also more recently saw both Abel and Broussard in connection with <u>coastal shoring</u>. That post was the last straw for Abel, who tried his hand at <u>Libel Tourism</u> by suing us via his straw girl puppets at the Lodge in Nova Scotia.

108.

This publication implicates Plaintiff's involvement in political corruption, which is untrue. Plaintiff has never misrepresented his ownership in Trout Point Lodge. Plaintiff did not have his business partners sue Defendant Handshoe for an illegitimate purpose or at all. Plaintiff is not a libel tourist.

109.

In a post written on September 26, 2011, and published in February, 2012, Defendant Handshoe published:

Perhaps an ex wife who partnered with Trout Point Owner Danny Abel to homecook the out of state plaintiff they attempted to fleece. Man the stories I've heard about Deonne whew!  And that doesn't count the problems Deonne and her ex are having in Florida these days. Kinda mirrors the crash and burn now occurring on the shores of the Tusket River in Nova Scotia huh.

110.

Plaintiff has never been married to Dubarry and his ex-wife is not Deonne Dubarry. Plaintiff was never involved with anyone in fleecing or homecooking anyone involved in a legal proceeding. Trout Point Lodge, which lies along the Tusket River, is and was not crashing or burning, which

implies it was or is having financial difficulties.

111.

On January 6, 2013, defendant Vandenweghe as "incroyable" published:

Civil fraud however was an issue for Leary, Perret and Abel in the spring of 2002 when
ACOA filed against them in NS Supreme Court. Perret and Abel had their law licenses to consider,
so of course Leary was the obvious choice to send in to defend the three.

Leary's line of defense was they were not in breach of contract because they had dissolved
the partnership getting sued, and specifically this partnership did not include Daniel Abel.

This is why Charles Leary filed against Slabbed. He saw a party in NS asking Slabbed about
the ACOA loan file back in August 2011, and 8 days later he filed Notice of Claim, using that public
communication in his sworn affidavit as reason why he felt fearful for his safety.

112.

Plaintiff was never accused of anything that would threaten his law license. The simple fact is
that plaintiff was never served in the ACOA litigation, and there was no strategy involved in having
Leary defend and file counterclaims against ACOA. In general, this publication implicates Plaintiff
in legal chicanery and fraud, which is defamatory per se.

113.

In a comment written on February 20, 2011, and published on slabbed.org in the 2nd week of
February, 2012, Defendant Vandenweghe as "unslabbed" imputed that subpoenas issued to Jefferson
Parish government officials in the federal criminal investigation would result in Grand Jury
testimony regarding topics such as Aaron Broussard's Nova Scotia properties (by imputation, based

Page 38 of 47

on previous impressions created by the Defendants, including Trout Point Lodge) in connection with charges of wire fraud, payroll fraud, and conspiracy.

114.

Plaintiff was never involved in any alleged or actual wrongdoing by Broussard, and his business has never been involved in any federal crimes.

115.

In a comment written on February 24, 2011, and published on slabbed.org in the 2nd week of February, 2012, Vandenweghe as "unslabbed" implicated the plaintiff's business in Nova Scotia as being the ultimate recipient of millions of dollars in monies paid by Jefferson Parish, while under Broussard's direction, to government waste disposal contractors.

116.

Plaintiff's business Trout Point Lodge was never the recipient of illegal monies from Louisiana.

117.

In a blog post written on August 3, 2011, and published the 2nd week of February, 2012, the defendant Handshoe published a blog post with the headline "I've just been informed. ...."

In this publication, the blog post was "tagged" with the following, including hyperlinks: Aaron Broussard, Atlantic Canada Opportunities Agency, Charles Leary, Danny Abel, Jefferson Parish Political Corruption Scandal, La Ferme D'Acadie &. Charles Leary v. The Atlantic Canada Opportunities, Trout Point Lodge, Vaughn Perret.

118.

In this publication, the defendant Handshoe wrote about "Trout Point Lodge and its

connections to the Jefferson Parish Political Corruption Scandal,"

The plaintiff says that this publication is defamatory per se in that it further linked the plaintiff's business with alleged political corruption, including criminal acts.

### 119.

Defendants at all times relevant used "tags" to, either directly or through defamatory innuendo, connect Mr. Abel with crimes, scandal, corruption, criminals, or suspected criminals.

The use of tags extended and accentuated the defamation of Plaintiff since search engines such as Yahoo! and Google readily read and use "tags" to categorize information and Internet searches.

Defendant's repeated publication of Abel's photograph in juxtaposition with words describing crimes, unethical activities, and other defamatory allegations was defamatory of the Plaintiff, whether he was mentioned by name in the publications or not. Cf. Justice Holmes' decision in Peck v. Tribune Co., 214 U.S. 185, 29 S. Ct. 554, 53 L. Ed. 960 (1909).

### 120.

In a blog post published on slabbed.org in the 2nd week of February, 2012, and written on August 15, 2011 the title was " Actually Matt, you had this one called right to begin with. Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update Part 1," Defendant Handshoe again linked and identified the plaintiff's small business with the Jefferson Parish political corruption scandal. This is false and defamatory.

### 121.

In this post, Defendant Handshoe implicated the plaintiff in " ordinary citizens losing their basic constitutional rights under the ruse of Tort Reform" including the "stripping" of ordinary

citizens across this country of their constitutional rights." This is false and defamatory.

122.

Defendant Handshoe wrote: "Abel was a good lawyer but his heart lay elsewhere in the world of cooking and hospitality and it is there he intersected with Charles Leary and Vaughn Perret as he funded their failed business ventures to his own financial detriment."

123.

This writing states that the plaintiff's business ventures were "failed" and that he funded them to his detriment. This would tend to lower the esteem held by reasonable persons for the plaintiff as a business person and professional.

124.

In a post published in February, 2012 and written on August 17, 2011. entitled "Laissez les bons temps rouler! Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update Part 2," Defendant Handshoe wrote and published that "the girls work as a unit to grift their way through life." The personal plaintiff was identified by Handshoe as part of this group.

125.

"To grift" is to obtain money or property illicitly. This is false and defamatory of the plaintiff and accuses him of criminal activity.

126.

In the same post, Handshoe wrote: "shape shifting is common for the girls as the reported ownership of the Trout Point Lodge and Dairy Farm has also magically morphed through time as we'll explore in a later post." Defendant Handshoe continued to write about "the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge." This is defamatory pf the

plaintiff, as he is closely associated with Trout Point Lodge and at the referenced time period was an officer and director of the corporation.

127.

In a post published in February, 2012, and written on August 18, 2011 Defendant Handshoe published a post entitled: "First class bitches, common thugs or plain ol' morons: The Girls at Trout Point Lodge sue Fox 8 and Slabbed. A Trout Point Lodge /Jefferson Parish Political Corruption Scandal Update." This is defamatory in that it refers to the plaintiff as a "first-class bitch," "common thug," and/or moron and it links the plaintiffs to and identifies him as part of the Jefferson Parish political corruption scandal. It also attempts to link slabbed and the television station Fox 8 WVUE as though slabbed were equivalent to a news media organization.

128.

In a post written on August 24, 2011, and published on slabbed.org in the 2nd week of February, 2012, Defendant Handshoe published material entitled: "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3." This is false defamatory. It accuses the plaintiff of lying in public and identifies him with the Jefferson Parish scandal.

129.

In this post, Defendant Handshoe wrote:

There is no doubt the timing of Rich Rainey's series of articles on Trout Point Lodge and Aaron Broussard's connections thereto could not have come at a more inopportune time for the three owners of the lodge, Danny Abel, Charles Leary and Vaughn Perret. While Rainey focuses his articles on the curious Nova Scotia connection involving Broussard and the complaint to the Louisiana Ethics Commission, Rainey's articles contained some damning evidence of potential

wrongdoing involving Leary and Perret in Canada and it had nothing to do with Broussard per se. In fact I'd submit to this day neither Rich Rainey or his employer know real reason why Leary and Perret went postal on them after his story on Trout Point appeared in January, 2010 but that changes today.                                           130.

This is defamatory in a number of respects. It states that retracted January, 2010 publications of the Times-Picayune newspaper came at an inopportune time for the plaintiff, implying that the plaintiff was secretly getting away with illegal or illicit activity that was uncovered by the newspaper at a bad time. It states that the newspaper articles contained damning evidence about the plaintiff's wrongdoing. This is defamatory and also makes no reference to the newspaper's published retractions, thereby misguiding readers with wanton disregard for the truth. The Defendant Handshoe stated that the plaintiff "went postal," implying that he had a violent and irrational overreaction to publications about him. This is false and defamatory.

131.

Statements made by the defendants about representative plaintiff are defamatory under the Louisiana Civil Code and the attendant jurisprudence as set forth below.

132.

Defendants are liable also to petitioners for the following: 1) they made false and defamatory statements against the plaintiffs-in-reconvention,  2) they published those statements, 3) they are at fault for these statements pursuant to *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, and 4) their statements caused petitioner injury and damages as set forth below

133.

Their statements and actions constitute defamation pursuant to *Costello v. Hardy*, 864 So.2d 129; *Fitzgerald v. Tucker*, 737 So. 2d 706; *Trentacosta v. Beck*, 703 So.2d 552 at 559 (*citing*

Page 43 of 47

RESTATEMENT (SECOND) OF TORTS § 558 (1977); *Sassone v. Elder*, 626 So.2d 345.

134.

They made these defamatory statements through their own negligence — in a reckless disregard for the falsity of the statements and the injuries that would result therefrom.

135.

In the alternative, they made these statements on purpose with the intent to disseminate false information about their sister in an attempt to cause her harm, subject her to ridicule, and bring about other damages.

136.

The section of the State Constitution governing Freedom of Expression does not protect defamatory statements or allegations, as that section specifically provides that every person is responsible for his abuse of the freedoms therein enumerated. Rather, such persons will be held liable if a finding of fault is made, under Louisiana Constitution Art. 1 § 7.

137.

The defendants' misstatements of fact cross the threshold necessary to support this defamation action. The threshold issue in a defamation action is whether the complained of words are defamatory, that is, capable of a defamatory meaning. The defendants named in this suit, have acted in such a manner so as to have crossed that threshold. These statements and allegations specifically defame Mr. Abel in regard to his person and in other instances, the other parties plaintiff as well.

138.

Defendants' actions encompass all elements necessary to prove the plaintiffs' cause of action: Fault, causation, and damage, as established by the Louisiana Civil Code Art. 2315 and by the jurisprudence, specifically in *Wattingly v. Lambert*, 408 So.2d 1126.

139.

The misstatements of facts made by defendants against the plaintiff are defamatory as they expose the plaintiff to contempt, ridicule, obloquy, because they tend to deprive him of the benefits of public confidence or injure him in his personal reputation. Defendants' misstatements of facts contain language, which upon its face has a natural tendency to injure the reputation of Mr. Abel.

127.

The statements made by defendants are "defamatory per se" as defined by the Louisiana Supreme Court in *Cangelosi v. Schwegmann Bros. Giant Supermarkets*, 390 So.2d 196 (La. 1980), where it cited *Trahan v. Ritterman*, 368 So.2d 191 (La. App. 1 Cir. 1979). As defendants' words are "defamatory per se," falsity and malice are presumed, and the defendants bear all burdens of rebutting that presumption.

140.

The defendants' conduct was a cause-in-fact of the plaintiffs' injuries. But for the defendants' conduct, the plaintiffs would not have suffered the injuries and damages complained of herein.

141.

Furthermore, the defendants had a legal duty to protect against the particular risk of damages involved.

142.

Clearly, that duty contained as an element the obligation to make a reasonable investigation of the information they conveyed to third parties. The defendants owed this duty to the plaintiffs-in-reconvention.

143.

The defendants breached this duty by failing to make a reasonable investigation of the information they disseminated to third parties and published it in the record of these courts, in certain violation of La. C.C.P. arts. 863 and 865.

144.

The information necessary to confirm or deny these claims was within easy reach of the defendants.

145.

The risk and harm occasioned as a result of their actions was in the scope of protection afforded

by the duty which the defendants owed the plaintiffs-in-reconvention.

146.

The risk and harm suffered by the plaintiffs in this case as a direct result of the defendants conduct were within the scope of protection afforded of the defendants' duties to the petitioner. Therefore, defendants are liable to the plaintiffs in this case for the damages suffered by them as a result of their negligent or intentional conduct.

147.

The defendants cannot assert privilege to exculpate them from their duty of liability to the plaintiffs in this action. Their actions do not meet the standard or satisfy the elements necessary to assert Louisianan's "qualified privilege" protection.

148.

Whether the defendants made these statements intentionally or negligently is of no moment in Louisiana. *Cotonio v. Guglelmo*, 176 La. 421 (La. 1933). Defamatory statements can be made intentionally or negligently. Petitioner has pleaded in the alternative that the defendants' acts were either negligent or intentional.

149.

That the defendants have acted with or without actual malice is of no moment. Actual Malice arising from the publication of a false and injurious charge, without probable cause for thinking the charges true, suffices. This imputes it to the publisher of a liable from the act of publication." *Weil v. Israel*, 8 So. 826. The defendants can make no claim of qualified privilege as a result of their actions.

150.

The defendants-in-reconvention are liable *in solido* for their actions according to the law as set forth in Louisiana Revised Statute 13:3415 and the attendant jurisprudence. *Jones v. Davis*, 233 So.2d 310 (La. App. 1970). Their insurers are liable for their actions as well.

Damages

151.

Representative plaintiff asks for all damages, costs, penalties, and fees such as arise under Louisiana law and are supported by the facts which they shall prove between now and at trial on this matter.

Direct Action Statute

152.

To the extent that defendants actions were a result of their negligence, the homeowners policies of insurance are or may provide coverage and as such are jointly liable for the full amount of all damages inflicted on representative plaintiff or others.

153.

 Request for Trial By Jury

Reservation of Rights As To Amendment By Other
Plaintiffs Domiciled in the State of Louisiana

154.

Representative plaintiff reserves his right to be joined by other parties plaintiff in this particular action, each of whom is domiciled in the State of Louisiana, in various parishers throughout.

Prayer

Representative plaintiff asks that defendants Handshoe and Vandenweghe be sited and summoned to answer this lawsuit, and after due process had, judgment be found in representative plaintiffs favor and in the favor of all other parties plaintiff who have joined this action, and that be damages, costs, fees, and penalties, such as are authorized under Louisiana law, where their damages occurred as proved by the evidence and facts heard and decided upon by a jury of their peers within the Parish of Orleans, State of Louisiana.

Respectfully submitted,

s/ Daniel G. Abel

Daniel G. Abel [Bar No. 8348]
2421 Clearview Parkway
Legal Department - Suite 106
Metairie, Louisiana 70001
Telephone: 504.284.8521
Facsimile: 888.577.8815
Email: danielpatrickegan@gmail.com

[Exhibits Attached to Signed Original
To Be Provided by Manual Delivery]

Withhold Service